UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

___

JOHN D. JUSTICE, 87-B-0385,

     Petitioner,

  -v-

HAROLD GRAHAM, Superintendent,

     Respondent.

DECISION AND ORDER
09-CV-6287CJS

___

INTRODUCTION

The petitioner, John D. Justice, acting *pro se*, seeking relief pursuant to 28 U.S.C. § 2254, was directed to show cause why his petition was not untimely. Petitioner responded with a series of arguments. For reasons that will be discussed below, the petition is dismissed as untimely.

BACKGROUND

The underlying facts of this case were set forth in various reported state- court decisions, *See, e.g., People v. Justice*, 173 A.D.2d 144, 579 N.Y.S.2d 502 (4th Dept. 1991); *People v. Justice*, 202 A.D.2d 981, 609 N.Y.S.2d 734 (4th Dept. 1994), and in a prior decision by this Court in another action commenced by Petitioner. *See, Justice v. Graham*, 6:09-cv-6054, Docket No. [#12], Decision and Order dated June 17, 20009. It is sufficient to note that on September 16, 1985, John D. Justice ("Petitioner"), then age seventeen, stabbed to death his father, mother, and thirteen-year-old brother, and then killed a random motorist by ramming his car into the motorist's vehicle. Petitioner was charged with four counts of murder in the second degree and four counts of criminal possession of a weapon in the fourth degree. At trial, Petitioner asserted the affirmative defense of insanity. The jury found

1

Petitioner guilty of intentional murder in the death of his mother and depraved indifference murder in the death of the motorist. The jury found Petitioner not guilty by reason of insanity in the deaths of Petitioner's father and brother. Subsequently, the murder convictions were reversed, and upon retrial, Petitioner was convicted of manslaughter in the first degree and manslaughter in the second degree. On January 14, 1993, Petitioner was sentenced on the manslaughter convictions to consecutive prison sentences, with an aggregate term of thirteen-and-one-third to forty years. Petitioner appealed, and on March 11, 1994, the New York State Supreme Court, Appellate Division Fourth Department, affirmed. *People v. Justice*, 609 N.Y.S.2d 734 (4th Dept. 1994). On June 13, 1994, the New York State Court of Appeals denied leave to appeal. *People v. Justice*, 83 N.Y.2d 968, 616 N.Y.S.2d 21 (1994).

On or about September 9, 2005, Petitioner was released from prison to the parole supervision. In addition to conditions set by the Division of Parole, Petitioner was subject to an Order of Conditions imposed by the court pursuant to Criminal Procedure Law ("CPL") § 330.20, as a result of having been found not responsible for two of the homicides by reason of mental disease or defect. An Order of Conditions was issued on January 3, 2006, and the conditions were made effective, retroactively, as of December 9, 2005. Petitioner appealed the imposition of the Order of Conditions, and on May 1, 2008, the New York Court of Appeals denied leave to appeal.

While on parole, Petitioner was subject to conditions set by both the Division of Parole and the New York State Office of Mental Health ("OMH"). Petitioner lived in a halfway house for approximately eleven months. However, on or about August 7, 2006, allegedly threatened to kill employees at the halfway house. Subsequently, Petitioner allegedly told his parole officer that he made the threats in order to be sent back to prison, since he did not want to remain on parole. In court proceedings, Petitioner stated that he did not want to remain at the

2

particular halfway house where he had been living, because it was a hotbed of criminal activity. Nevertheless, Petitioner was arrested for violating parole and placed in the Erie County Holding Center. At that time, Erie County assumed responsibility for Petitioner's mental health needs from OMH. New York State Division of Parole subsequently conducted a final revocation hearing, and revoked Petitioner's release, and Petitioner was returned to the custody of the New York State Department of Correctional Services ("DOCS").

On January 8, 2007[1], Petitioner commenced a habeas corpus proceeding in New York State Supreme Court, Erie County. Petitioner argued that the revocation of his parole violated his due process rights, because the Division of Parole denied Petitioner the ability to receive supervision from OMH. To summarize Petitioner's claim, he alleged that it was "illegal and unconstitutional for him to be placed in state prison, while under court ordered mental health treatment pursuant to an Order of Conditions under CPL [§] 330.20." (State Habeas Petition (Docket No. [#1-3] at p. 32). On or about April 25, 2007, Erie County Supreme Court denied the habeas petition and dismissed Petitioner's action. Apparently, in that regard, the Supreme Court Justice who dismissed the petition advised Petitioner to raise his constitutional concerns at the final parole revocation hearing. However, at the final parole revocation hearing, the Administrative Law Judge ("ALJ") ruled that Petitioner's constitutional claims were outside the scope of the proceeding.

Petitioner appealed the dismissal of his habeas petition to the New York State Supreme Court, Appellate Division, Fourth Department ("Fourth Department"). However, by that time, a final parole revocation hearing had been conducted, Petitioner's parole had been revoked, and Petitioner had been removed from the custody of the Erie County Holding Center and returned to the custody of the New York State Department of Correctional

---

1 Notably, Petitioner commenced the state collateral attack one year and four months after he was released on parole and learned that the § 330.20 conditions would be imposed, and 370 days after the Order of Conditions was issued on January 3, 2006.

Services ("DOCS"). For those reasons, the Fourth Department subsequently dismissed Petitioner's appeal as moot. On March 18, 2008, Petitioner applied to the New York Court of Appeals for leave to appeal. On September 4, 2008, the Court of Appeals denied the application. On October 31, 2008, Petitioner applied to the United States Supreme Court for writ of certiorari. On January 12, 2009, the Supreme Court denied that application. On February 6, 2009, Petitioner commenced a habeas proceeding in this Court, *Justice v. Graham*, 6:09-cv-6054 CJS, which is still pending.

On October 20, 2008, while the aforementioned collateral attack was still pending in state court, Petitioner commenced another collateral attack on his sentence in Erie County Court. On January 27, 2009, Erie County Court denied the application. On March 10, 2009, the New York State Supreme Court, Appellate Division Fourth Department denied leave to appeal. On April 9, 2009, the New York Court of Appeals denied leave to appeal.

On June 2, 2009, Petitioner commenced the subject action. Petitioner alleges that his constitutional rights were violated when he was sentenced to prison for his manslaughter convictions in 1993. Petitioner's theory is convoluted, and is complicated by the unusual procedural and factual history of his case. To review, Petitioner was found not guilty of two counts of murder by reason of insanity, and was convicted of two other counts of murder. As a result of being found not guilty by reason of insanity on two of the murder charges, Petitioner was subject to the provisions of NYCPL § 330.20. The two murder convictions were reversed, and on retrial, Petitioner was convicted of two counts of manslaughter. At sentencing on the manslaughter convictions, Petitioner maintains that he was "led to believe"[2] that he was no longer subject to the provisions of NYCPL § 330.20 with regard to the murder charges on which he was found not guilty by reason of insanity, since he was being sent to

---

[2] In that regard Petitioner states that at his sentencing for the manslaughter convictions, his attorney was told, by an employee of the New York Office of Mental Health, that Petitioner was under no obligation with regard to NYCPL § 330.20. Of course, Petitioner's manslaughter convictions did not involve NYCPL § 330.20.

4

prison on the manslaughter convictions. Petitioner further states that while in prison, he did not receive mental health services from the Office of Mental Health, and he was not subject to conditions under NYCPL § 330.20. However, when Petitioner was paroled in 2005, he was notified that he would be required to submit to conditions imposed under NYCPL section 330.20, in addition to the conditions of parole. Petitioner learned that he was subject to the NYCPL 330.20 conditions on September 8, 2005, and as discussed above, the actual Order of Conditions under NYCPL § 330.20 was issued on January 3, 2006. Petitioner contends that all of the foregoing violated his constitutional rights. In this regard, Petitioner contends, *inter alia*, that: 1) he was misled about being subject to NYCPL § 330.20 at sentencing; 2) was denied mental health treatment while in prison; 3) he was "punished" for being found not guilty of murder by reason of insanity, by being sent to prison for the separate manslaughter convictions. (Petitioner's Memorandum of Law in Support of Habeas Petition).

On June 18, 2009, the Court ordered petitioner to show cause why the petition is not time-barred. On July 1, 2009, Petitioner filed a response. (Docket No. [#6,7]). In his response, Petitioner argues that the one-year limitations period did not begin to run until May 1, 2008, when the New York Court of Appeals denied him leave to appeal concerning his challenge to the NYCPL § 330.20 Order of Conditions. (Petitioner's Response Regarding Timeliness, Docket No. [#7], at par. 17) ("The New York Court of Appeals denied leave to appeal the CPL 330.20 proceedings on May 1, 2008. It was only then that State remedies had been exhausted. It was only then that your Petitioner learned that the State still held your Petitioner accountable to CPL 330.20. This was the date on which the factual predicate of the claim could have been discovered through due diligence.").

DISCUSSION

According to 28 U.S.C. § 2244(d)(1), a one-year period of limitations applies to an

application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court. The limitation period shall run from the latest of —

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the [United States] Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The filing of collateral attacks does not restart the statute of limitations period. As the Second Circuit made clear in *Smith v. McGinnis*, the "proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run." *Smith*, 208 F.3d 13, 17 (2d Cir. ), *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed.2d 63 (2000). Put another way, tolling extends the time to file a habeas petition by delaying the expiration of the statutory period, but has no effect once the period has expired.

Here, Petitioner is challenging a sentence that became final in 1994. Years later, following his release to parole supervision, Petitioner collaterally attacked the Order of Conditions issued pursuant to NYCPL § 330.20. However, the filing of that collateral attack did not re-start the limitations period. Moreover, the essence of Petitioner's claim regarding timeliness is that he did not learn that he was subject to conditions under NYCPL § 330.20

6

until he was paroled. However, Petitioner was paroled on September 9, 2005, and he did not bring any collateral attack concerning the applicability of NYCPL § 330.20 until more than a year later. Such collateral attack could not toll the limitations period, because the period had already expired.

CONCLUSION

For the foregoing reasons, Petitioner's application is denied, and this action is dismissed. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: Aug 5 , 2009
Rochester, New York

_Charles Siragusa_
CHARLES J. SIRAGUSA
United States District Judge